THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY A. MANZO, Defendant-Appellant.

First District (3rd Division)   No. 1—87—2577

Opinion filed May 10, 1989.—Rehearing denied June 21, 1989.

554

Genson, Steinback & Gillespie, of Chicago (Edward M. Genson and Terence P. Gillespie, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, James E. Fitzgerald, Gayle Terry and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McNAMARA* delivered the opinion of the court:

Following a jury trial, defendant, Ricky Manzo, was convicted of attempted murder and was sentenced to a six-year prison term and fined $3,000. Defendant appeals, alleging that the trial court erred in denying his motion for a mistrial when the State failed to comply with discovery requirements; that the State failed to prove him guilty of attempted murder beyond a reasonable doubt; that the trial court improperly instructed the jury; and that the trial court erred in denying defendant's motion to suppress oral and written statements.

During opening statements at trial, the prosecutor informed the jury regarding the evidence which would be introduced. The prosecutor specifically quoted two oral statements which defendant had made to the complainant, Ricardo Ramirez. Defense counsel asked for a sidebar and moved for a mistrial, alleging that the State violated discovery requirements by not tendering these statements to defense counsel as requested.

---

*Justice McNamara participated in this opinion prior to his transfer to the sixth division.

The State acknowledged that the statements were not in the materials tendered to defendant during discovery. The State maintained, however, that defense counsel would have been aware of these statements had Ramirez been interviewed. The court ruled that it would not preclude the statements and denied the motion for a mistrial. The court continued the matter until after lunch so defense counsel would have the opportunity to interview defendant regarding these statements. Defendant then presented his opening statement, and the State presented its case in chief.

Ramirez testified for the State that at approximately 2 a.m. on January 3, 1986, he was driving home from work. He stopped in the left turn lane at the traffic light located at the corner of 47th Street and Cicero Avenue. There was little traffic at that hour, but there was a garbage truck also waiting at the light in the far right lane.

Ramirez noticed someone approach his car on the driver's side. Ramirez later identified this individual as codefendant, Jim Kulevich. (Kulevich's trial was severed from that of defendant, and Kulevich is not involved in this appeal.) Kulevich motioned for a ride with his thumb. Ramirez waved his hand back and forth, indicating "no." Ramirez then saw another person, whom he later identified as defendant. Defendant stood approximately four feet from the car.

Kulevich reached for the car door and began to open it. Ramirez grabbed the door and closed it. Defendant then pulled out a gun and said, "[O]pen the door, mother fucker." Ramirez estimated that the gun was two feet from the car and was aimed at his head. Kulevich attempted to open the door again but Ramirez locked the door with his elbow. Defendant then said, "[O]pen the door son of a bitch," and fired the gun at Ramirez. (It was these two foregoing comments that were not disclosed in discovery.) Ramirez estimated that the bullet hit four inches from the front door jamb and within 14 inches of his head. As he leaned back, a second shot was fired, shattering the window on the driver's door. Both shots landed in the dashboard of the car. Ramirez then heard the gun click, as if misfiring. The gun still was aimed at his head. Ramirez drove off, went to a nearby restaurant, and called the police. His only injuries were scratches and punctures on his hands and face from flying glass.

The police arrived, and Ramirez gave them a statement, including descriptions of both men. The police apprehended defendant and Kulevich. Ramirez identified Kulevich as the man who initially approached the car and identified defendant as the man who shot at him. Ramirez also identified the gun found in defendant's possession as being the same or similar to the one used by defendant. Police ex-

amination of the gun revealed a misspent or misfired bullet in the chamber.

Evidence technician Thomas Kelly photographed and processed the Ramirez vehicle. He testified for the State that the driver's window was completely blown out and that the interior front dashboard was damaged in the speaker area. He was unable to tell if the bullets ricocheted off the glass.

Henry Van Tholen, the driver of the truck which was stopped at the light with Ramirez that morning, testified for the State that he was in the right lane, stopped at a red light at the corner of 47th Street and Cicero. There was a car to the left of him, with one lane in between the two vehicles. As he waited, Van Tholen observed two individuals approach the car. He heard gunshots and saw one of the individuals holding a gun with two hands. The gun was aimed at the window of Ramirez' car. The individual's arms were extended and he was standing a few feet from the car. Van Tholen then saw the Ramirez car drive away. He followed the car to make sure the driver was all right and advised him to go to a nearby restaurant where he could call the police.

After the State presented its case in chief, defense counsel renewed his motion for a mistrial based on the nondisclosed statements. The court granted a 24-hour continuance and stated that it would allow the recalling of Ramirez if necessary. The court also ordered the State to review its files and to turn over any notes. A review of the felony review file revealed no reference to the statements.

Following the continuance, the State notified the court that a previously discussed stipulation to the testimony of a gun residue expert would not be offered because the expert, who had provided a positive report, had changed her analysis and had determined the test to be inconclusive. The prosecutor had notified defense counsel upon receipt of this information. Defendant again moved for a mistrial, alleging a discovery violation. The court denied the motion.

The State then rested its case. The defense rested without presenting any evidence or testimony.

Defendant first contends that the trial court erred in denying his motion for a mistrial based on the State's failure to comply with discovery requirements. The first discovery violation occurred when the State, in opening argument, and Ramirez in his testimony, mentioned statements made by defendant to Ramirez during the commission of the offense. Defendant claimed surprise in that he was unaware of the statements. The second incident occurred when the State informed the court and defense counsel that a previously tendered report was

being retracted by the technician, who now determined that the results were inconclusive. Defendant claims that each of these incidents deprived him of a fair trial. He maintains that the trial court's remedial measures were insufficient to remove the prejudice resulting from the incidents and precluded defense counsel from formulating an appropriate defense strategy. We will address the two incidents individually.

In opening argument, the prosecutor quoted the comments and profanities which Ramirez had attributed to defendant. These statements were not made known to defense counsel despite the discovery request for any and all oral and written statements made by defendant. Defendant contends that the substance of the nondisclosed statements was the basis for the State's argument that defendant had the specific intent to kill Ramirez. Defendant maintains, therefore, that the defense strategy would have been reformulated had defense counsel been aware of the statements. Moreover, defendant alleges that the continuance which the trial court granted was an insufficient sanction.

■ Supreme Court Rule 412 requires the State to disclose upon written motion "any written or recorded statements and the substance of any oral statements made by the accused *** and a list of witnesses to the making and acknowledgment of such statements." (107 Ill. 2d R. 412(a)(ii).) The purpose of the rule is to afford the accused protection against surprise, unfairness and inadequate protection. (*People v. Hinton* (1984), 122 Ill. App. 3d 89, 460 N.E.2d 791.) The rule encompasses not only formal statements to the authorities, but also any statements, made to anyone, that might have bearing on the defendant's guilt or innocence. (*People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255; *People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) The State has a continuing duty to disclose statements made by the accused, and this duty is violated whether the State's neglect was inadvertent or purposeful. *People v. Eliason* (1983), 117 Ill. App. 3d 683, 453 N.E.2d 908.

■ The State concedes that its failure to disclose the statements to defense counsel was a violation of its discovery obligation. Nonetheless, not every violation of Rule 412 requires reversal. (*People v. Greer* (1980), 79 Ill. 2d 103, 402 N.E.2d 203.) Supreme Court Rule 415 provides a variety of sanctions which may be imposed for the violation of a discovery rule. (107 Ill. 2d R. 415.) A trial court may order disclosure of the material, grant a continuance, exclude the evidence, or enter such an order as seems just under the circumstances. (107 Ill. 2d R. 415(g).) In fashioning its sanction, the trial court must evalu-

ate the strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, and the willfulness of the State in failing to disclose. (*People v. Norks* (1985), 137 Ill. App. 3d 1078, 484 N.E.2d 1261.) The sanction to be applied is left to the trial court's discretion, and in general, the judgment of the trial court is given great deference. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303; *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.) A reviewing court will nonetheless find an abuse of discretion when a defendant is prejudiced by the discovery violation and the trial court fails to eliminate that prejudice. *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255.

■ We believe that the trial court's sanction was appropriate and that defendant was not prejudiced by the trial court's denial of his motion for a mistrial. The trial court granted defense counsel two continuances to afford him the opportunity to interview any witnesses regarding the statements. We find that these continuances, a one-hour continuance after the State's opening argument and a 24-hour continuance at the end of the first day of testimony, afforded defense counsel ample time to interview any relevant parties.

Defendant argues that his theory of defense would have changed had he known about these statements. Nonetheless, the statements were not crucial to the State's case. The State presented the eyewitness testimony of Ramirez and Van Tholen. This testimony detailed defendant's actions: defendant stood four feet from Ramirez' vehicle, held the gun with both hands, arms extended, and fired the weapon. The State stated repeatedly during closing argument that the jury should look to these actions for defendant's intent. In fact, on more than one instance, the State specifically noted that defendant's actions spoke louder than his words. Only once during closing argument did the State refer to the statements, and then did so in the context of discussing defendant's intent to commit aggravated battery. Thus, defendant has failed to demonstrate that these statements strongly contributed to the jury's conclusion that he was guilty of attempted murder.

The trial court did not abuse its discretion in determining that a continuance was the appropriate measure to remedy the State's discovery violation. The two continuances afforded defense counsel ample opportunity to adjust defense strategy and to interview any relevant witnesses regarding the statements. Moreover, as the statements were not essential to the conviction, the granting of a mistrial would have been a disproportionate sanction.

The second incident which defendant contends deprived him of his

right to a fair trial involved a laboratory report regarding gun residue. Initial analysis of defendant's hands for gun residue indicated that defendant had fired a gun on the morning in question. The State gave defense counsel a copy of a report to this effect.

On the third day of trial, the technician notified the State that she had recalculated her standard and now had determined that the gun residue tests were inconclusive. The State immediately reported the new result to the court and to defense counsel. Nonetheless, defendant claims the incident violated the mandate set forth in *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, and that the trial court's refusal to consider the incident a discovery violation requiring a mistrial denied him a fair trial.

In *Brady v. Maryland*, the Supreme Court held that a violation of due process occurs when a prosecutor suppresses evidence material to either the guilt or the innocence of the accused after there has been a request for its production. Omitted evidence is material if it creates a reasonable doubt of defendant's guilt. *People v. Williams* (1980), 91 Ill. App. 3d 631, 414 N.E.2d 1235.

We initially note that there appears to have been no suppression of the report. The State tendered the initial report to defendant and then immediately notified him upon learning that the conclusion of the report was being changed. There is no indication that the State acted in bad faith.

Moreover, even if the report had been suppressed, we do not believe the information contained in the report to be material in the *Brady* context. Although the decision of the technician to change the results of the test makes her testimony on this issue suspect, that decision does nothing to undermine the substantial evidence that defendant fired the gun. Specifically, Ramirez positively identified defendant as the person who fired the gun; defendant was found in possession of a gun shortly after the shooting; and Ramirez identified the gun as being the same as, or similar to, the one which he saw defendant with that morning. In light of this testimony, we do not believe that the gun residue evidence raised a reasonable doubt of defendant's guilt, nor do we believe that the changed analysis of the technician would have required defendant to make any significant change in defense strategy. Accordingly, we conclude that no *Brady* violation occurred.

Defendant next contends that the trial court erred in failing to direct a verdict in his favor at the close of the State's case. He maintains that the State's evidence was insufficient as a matter of law to establish that he was guilty of attempted murder beyond a reasonable doubt because the State failed to prove that defendant had a specific

intent to kill Ramirez.

In order to prove defendant guilty of attempted murder, the State must prove that he had the specific intent to kill the victim. (*People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535.) Intent may be established by surrounding circumstances, and the intent to take a life may be inferred from the character of the assault, the use of a deadly weapon, and other circumstances. (*People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *overruled on other grounds People v. Nunn* (1973), 55 Ill. 2d 344, 304 N.E.2d 81.) Moreover, the very fact of firing a gun at a person supports the conclusion that the accused acted with the intent to kill. *People v. Seats* (1979), 68 Ill. App. 3d 889, 386 N.E.2d 879; *People v. Thorns* (1978), 62 Ill. App. 3d 1028, 379 N.E.2d 641.

Defendant claims that the evidence does not support a conclusion that he intended to kill Ramirez. Defendant alleges that the fact the bullets landed in the dashboard requires us to conclude that he did not intend to shoot Ramirez, but was merely attempting to frighten Ramirez. Defendant asserts that he purposefully shot directly at the dashboard, away from the driver, so as not to hurt him. However, there is no basis in the record for his allegations on appeal regarding the purpose of his actions that morning. Moreover, any inferences with respect to the path of the bullets which defendant now asks us to make are inappropriate as the trial court specifically noted that there was no evidence about the bullet trajectory, one way or the other.

We believe that the evidence presented at trial sufficiently establishes that defendant did intend to kill Ramirez. Ramirez testified that defendant, standing a few feet from the car, pulled out a gun, pointed it directly at his head, and fired the weapon. It is our judgment that, based on this testimony, the jury could reasonably conclude that defendant intended to kill Ramirez. The natural tendency of this act is to destroy another's life (see *People v. Coolidge* (1963), 26 Ill. 2d 533, 187 N.E.2d 694), and the fact that the bullets did not strike Ramirez does not create a reasonable doubt. Accordingly, we find that the trial court did not err in refusing to direct a verdict in favor of defendant at the close of the State's case. Defendant was proved guilty of attempted murder beyond a reasonable doubt.

Defendant next contends that the trial court erred by giving an improper jury instruction which impermissibly allowed the jury to convict defendant of attempted murder without showing that defendant had a specific intent to kill. The instruction which defendant complains of indicated that the jury could find defendant guilty of at-

tempted murder if it found that defendant intended kill *or do great bodily harm* to Ramirez.

A finding that a defendant intended to do great bodily harm is insufficient to establish the offense of attempted murder. (See *People v. Jones* (1979), 81 Ill. 2d 1, 405 N.E.2d 343.) Here, however, the trial court immediately recognized the error in instructing the jury that a finding of intent to do great bodily harm to Ramirez would suffice to convict defendant of attempted murder. The trial court thereupon brought the jury back to the courtroom and read and tendered the proper instruction. This action took place within approximately 10 minutes of the time at which the jury began deliberating. The jury was informed that an error had been made and was instructed to stop their deliberations until the correct instruction could be given.

■■ The cases which defendant cites in support of his argument are inapplicable as each involved a situation in which the improper jury instruction was not corrected. Here, the improper instruction was discovered and a correct instruction was given. The trial court's prompt action cured any error which may have resulted from the initial erroneous instruction. No reversible error occurred.

■■ Defendant finally contends that the trial court erred in denying his motion to suppress oral and written statements. Significantly, however, defendant fails to assert that any statement subject to the motion to suppress was placed into evidence at trial. Our review of the record reveals that these statements in fact were not offered as evidence by the State. Accordingly, we see no genuine issue to be reviewed. See *People v. Endress* (1972), 5 Ill. App. 3d 821, 284 N.E.2d 725.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

RIZZI and WHITE, JJ., concur.