THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DONALD VOLKMAN, Defendant-Appellant.

First District (1st Division)   No. 1—89—2806

Opinion filed September 21, 1992.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Judith M. Pietrucha, Special Assistant State's Attorney, and Renee Goldfarb, Assistant State's Attorney, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial, defendant was convicted of reckless homicide (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a)) and driving while under the influence of alcohol. (Ill. Rev. Stat. 1989, ch. 95½, par. 11—501(a)(2).) He was sentenced to 3½ years' imprisonment for the reckless homicide conviction and a concurrent term of 364 days for the remaining conviction.

On appeal, defendant contends that: (1) the trial court's questioning of the venire denied his right to a fair and impartial trial; (2) his sixth amendment right to choice of counsel and effective assistance of counsel was violated; and (3) his constitutional right to the presence of counsel during the proceedings was violated when the jury verdict was rendered in his absence.

On July 14, 1987, several cars were proceeding eastbound on Touhy Avenue just east of Lehigh Road when a red convertible Chevrolet driven by defendant moved across the double yellow line and struck an oncoming car, a red Oldsmobile 98 Regency, which was being driven by the decedent, Herbert Knechtel. The left front fender of defendant's Chevrolet hit the left front fender of the 98 Regency and caused the 190-degree spin of the Regency. After the Regency had turned clockwise 190 degrees, it was hit broadside on the front end of the driver's side by a blue Oldsmobile 88 driven by Mrs. Palmlund.

Mrs. Palmlund and her husband, who was a passenger in their car, were taken to Skokie Valley Hospital for medical treatment. One of the investigating officers who found Mr. Knechtel motionless directed a paramedic unit to transport him to the hospital. Mr. Knechtel remained in critical condition until his death a week later. The trauma surgeon testified that the cause of death was multisystem failure secondary to trauma.

Defendant first contends that the trial court's questioning of the venire was insufficient to insure him the selection of a fair and impartial jury. He maintains that the judge in this case made the identical error which the judge made in *People v. Zehr* (1984), 103 Ill. 2d 472, 469 N.E.2d 1062, where the Illinois Supreme Court held that the trial judge's failure to ask three *voir dire* questions by the defense constituted reversible error. These three *Zehr* questions are:

"(1) If at the close of all the evidence and after you have heard arguments of counsel you believe that the State has failed to sustain the burden of proof and has failed to prove the defendant guilty beyond a reasonable doubt, would you have any hesitation whatsoever in returning a verdict of Not Guilty?

(2) If the defendant, Mr. Zehr, decides not to testify in his own behalf, would you hold it against him?

(3) Do you understand that the defendant is presumed innocent and does not have to offer any evidence in his own behalf, but must be proven guilty beyond a reasonable doubt by the State?" 103 Ill. 2d at 476.

We have reviewed the trial court's questioning of the venire and find that the court substantially complied with the dictates of *Zehr* when it addressed the venire as a whole. The court is not required to question each and every juror individually as long as the "subject matter of the questions" is "covered in the course of interrogation on *voir dire*." *Zehr*, 103 Ill. 2d at 477.

Although admonitions and instructions are no substitute for interrogation (*People v. Starks* (1988), 169 Ill. App. 3d 588, 523 N.E.2d 983), and although the court here did not question each prospective juror individually, it addressed the venire en masse and invited each of them to respond individually when questioned about the broad principles of law applicable to all criminal cases. The court then explained the nature of the indictment, the presumption of innocence, the burden of proof and the fact that defendant's failure to testify must not be held against him. The court also told the jurors they would receive instructions on the law at the conclusion of the case.

Defendant urges that the court appeared to have a lack of regard of its obligation to pose the *Zehr* questions when it stated that such questions "were optional." While the court seemed to have a lax attitude and failed to specifically pose the *Zehr* questions, we believe that the purpose as expressed in *Zehr* was satisfied here by the trial court's broad admonitions, coupled with its subsequent discussion of the presumption of innocence and burden of proof. (*People v. Emerson* (1987), 122 Ill. 2d 411, 426-27, 522 N.E.2d 1109.) In the instant case, the judge first addressed the venire en masse. He next addressed an array of 12, and then reduced that group to a panel of four which was to be accepted or rejected by the State, and then if applicable, accepted or rejected by the defense. The remaining persons, if any, were then impanelled as jurors. Before a new panel was passed on to the parties, the court selected another array by reshuffling the cards and starting the process anew. Mr. Jacobs, one of the defense attorneys, objected to the court's method of selecting the jurors and expressed that he had never seen such a process in 37 years of trial work. The other defense attorney, Mr. Novelle, also expressed some confusion about the manner in which the jurors were entering the courtroom.

■ Although the procedure used by the court was somewhat unusual, we do not believe the overall method deprived defendant of his right to a fair and impartial jury. First, the court asked general questions of the entire group to ascertain their understanding of the broad principles of law inherent in all criminal cases. He told the jurors that "[t]he defendant under the law is presumed to be innocent of the charge" and that the jurors must be "satisfied beyond all reasonable doubt that the evidence presented in court is sufficient for you to find the defendant guilty." He also explained that the "State has the burden of proving beyond all reasonable doubt that the defendant is guilty of the charge." The court further stated that "[t]he law does not require the defendant to do or say anything to prove his or her

innocence, and I might add the law is very clear the failure of the defendant to testify may not be taken into consideration in arriving at a verdict." The court then, still questioning the venire en masse, asked any member who felt that he or she could not be impartial because of the nature of the charges to step forward for further questioning.

*Voir dire* continued over a period of three days during which time the court extensively questioned the venire. Once the smaller arrays of 12 were selected at random, the court asked more specific questions to ascertain any bias of a prospective juror, his or her ability or lack thereof to try a case involving a reckless homicide committed by a drunken driver, and his or her knowledge of the particular case or persons involved in it. Following the selection of 12 jurors and 2 alternates, as previously stated, the court again reminded them of their obligation as jurors and that at the conclusion of the case, they would be instructed on the law applicable to this case.

Accordingly, we find no error in the trial court's questioning of the venire. We conclude that defendant was not deprived of his right to a fair and impartial jury.

Second, defendant asserts that his constitutional right to counsel of choice was violated where the court improperly interfered with his right to choose to retain one attorney and replace another during the trial. He also contends that the court's denial of new counsel's request for a 30-day continuance violated his right to counsel of choice and his right to effective assistance of counsel.

The record reflects that defendant's initial attorney, Mr. Novelle, filed a motion to withdraw as counsel two weeks before trial and that his associate set the time for hearing on the motion one week prior to trial. Purportedly, the attorney-client relationship deteriorated beyond repair when defendant refused to pay additional money for an expert witness. When defendant learned of Mr. Novelle's desire to withdraw, he expressed his own desire to fire Mr. Novelle and substitute Mr. Jacobs as new counsel.

After the hearing on the motion to withdraw, the judge denied Mr. Novelle's request, but informed defendant that he would reconsider the motion if defendant secured substitute counsel who would be ready for trial the following week. However, on the day scheduled for the trial to begin, Mr. Jacobs appeared with defendant and requested a 30-day continuance to prepare for trial. The court denied Mr. Jacobs' motion for a continuance and also denied Mr. Novelle's motion to withdraw, the effect of which provided defendant with two separate trial counsel. The court did, however, allow Mr. Jacobs until the

next day to review the file. Mr. Novelle objected to remaining on the case each day of the trial and also renewed his motion to withdraw as counsel, which was in turn repeatedly denied by the trial court. On or about the fifth day of the trial, Mr. Novelle refused to remain on the case and left the courtroom at which time the court noted for the record that Mr. Novelle had participated as defense counsel during the trial.

The right to be represented by counsel of one's choice must be balanced against the equally desirable public need for the efficient and effective administration of criminal justice. (*People v. Myles* (1981), 86 Ill. 2d 260, 268, 427 N.E.2d 59.) However, it is well settled that a criminal defendant's right to the counsel of his choice is not absolute. (*United States v. O'Malley* (7th Cir. 1986), 786 F.2d 786.) Rather, the determination of whether defendant's right to select counsel of his choice unreasonably interferes with the orderly process of judicial administration depends upon the particular facts and circumstances surrounding each case and lies within the sound discretion of the trial court. *People v. Holmes* (1987), 155 Ill. App. 3d 562, 508 N.E.2d 405.

■ In the present case, the facts indicate that the trial court effected a proper balance where it required Mr. Novelle to remain on a case which had been pending for two years and which the court had determined was proceeding to trial on the scheduled date. The trial court had already remarked during pretrial proceedings that this matter had gone on too long and that the September 1989 trial date was firm.

Accordingly, we conclude that the defendant was not denied his right to counsel of his own choosing. When the defendant expressed to the court a week before the trial that he desired to replace Mr. Jacobs as new trial counsel since Mr. Novelle desired to withdraw from the case, the court informed him that he would entertain the motion to withdraw as long as new counsel came to trial prepared to proceed. This ruling by the trial court made it clear that if counsel of defendant's choice was not available for trial at the scheduled time, the defendant could either proceed with Mr. Novelle, who had been associated with the case from its inception, or proceed with a new attorney, purportedly, Mr. Jacobs. Contrary to defendant's argument in the brief, several of the many continuances were either requested by the defendant, acquiesced in by him or could be attributed to his filing of several pretrial motions.

Moreover, we do not believe the defendant received ineffective assistance of counsel because of the trial court's denial of his motion for a continuance. The test of incompetency is based upon a showing that

the attorney's performance fell below an objective standard of reasonableness and was prejudicial to defendant. In order to show prejudice, defendant must establish there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceedings would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 694-96, 80 L. Ed. 2d 674, 697-99, 104 S. Ct. 2052, 2068-69.) In the present case, although it may be said that the trial judge's ruling which required two attorneys to remain on the case was not the norm, it cannot be said that any impropriety in the ruling rose to the level of error requiring a new trial. The record unequivocally shows that the alleged errors asserted by the defendant fail to support his claim of ineffective assistance of counsel.

Here, there are no allegations of unprofessional errors committed by either attorney. To the contrary, both the original and substitute counsel were experienced trial attorneys. Although Mr. Novelle had made it clear he did not want to go to trial on this case, he was in court each day prior to the day he walked out. He assisted Mr. Jacobs through the jury selection and argued a motion *in limine*. Mr. Jacobs proceeded and assumed full representation of the defendant by participating in the jury selection, cross-examining all witnesses, presenting jury instructions, and arguing during closing argument. The fact that both attorneys remained on the case during the first week did not amount to an interdependent conflict of interest between counsel and the defendant. There is nothing in the record to suggest that Mr. Novelle was forced into a conflict of interest by assisting Mr. Jacobs in the trial or that Mr. Novelle's presence caused defendant to participate in the type of defense he had previously disagreed with.

■ Taking into consideration the fact that this case had already been prepared by Mr. Novelle, and that the case itself was not so complex that Mr. Jacobs required a great amount of time or expert assistance to understand the issues, we find that denial of the continuance to prepare for trial was not error. (See *United States v. Rodgers* (7th Cir. 1985), 755 F.2d 533.) There is nothing here to show neglect of the case or the trial because of the presence of both counsel or because of the trial court's denial of the motion for a 30-day continuance.

Moreover, defendant suffered no prejudice since the result of the proceeding would have been no different, given the overwhelming evidence that defendant committed the crimes as charged. Accordingly, even assuming the trial court made an error in denying the motion to withdraw and the motion for a continuance, we conclude that defend-

ant has failed to show that the outcome of the trial would have been different.

Finally, we consider defendant's contention that his constitutional right to be present at all critical stages of the proceedings (see *People v. Nelson* (1960), 18 Ill. 2d 313, 164 N.E.2d 16) was violated because he was absent when the jury returned its guilty verdict. Under the United States Constitution, criminal defendants have a general right to be present at their trials (*People v. Bean* (1990), 137 Ill. 2d 65, 82, 560 N.E.2d 258) and at every critical stage of the criminal proceedings, including the imposition of sentencing. See *Waldon v. United States* (E.D. Ill. 1949), 84 F. Supp. 449.

In the instant case, the record demonstrates defense counsel had advised the court in chambers that because of a late evening meeting he might be unavailable when the jury returned its verdict. If this occurred, he requested the court to seal the verdict and wait to open it until the following morning. However, defense counsel was available at the time the jury finished its deliberations. He returned to court and when asked by the judge if the defendant was present, counsel replied that he did not have a chance to contact the defendant. The court then advised counsel to reach the defendant. Counsel stated when he called the defendant's home he received a recorded message. The judge then allowed the jury to render its verdict in defendant's absence and defense counsel waived the polling of the jury.

■ The cases we reviewed in which the defendant was discharged or granted a new trial for violation of his right to be present during the proceedings all involved situations where the defendant was involuntarily absent from the proceedings. However, it has been held that a defendant who voluntarily absents himself from the trial or some stage thereof waives his right to be present during the critical stages of the proceeding. (See *People v. Partee* (1988), 125 Ill. 2d 24, 530 N.E.2d 460; *People v. Castro* (1983), 114 Ill. App. 3d 984, 449 N.E.2d 886.) We believe that defendant waived his right to be present by leaving the courtroom without being excused and that his absence was voluntary and wilful. Defendant was aware of the fact that the jury had retired for deliberations. Yet, there is no explanation for his absence from the courtroom. Neither were there circumstances present here to show that defendant was imprisoned or prevented by an improper means from being present when the verdict was rendered. He failed to leave a message as to his whereabouts or inform counsel or the court where he would be in the event the jury returned a verdict that evening. Moreover, defendant did not make an objection to the court regarding the return of the verdict in his absence when

he appeared in court the following morning. See *People v. Smith* (1955), 6 Ill. 2d 414, 129 N.E.2d 164.

Assuming *arguendo* the trial court's allowance of the jury's return under these circumstances constitutes error, it is no more than harmless error. It cannot be said that such action contributed to the verdict. Moreover, this is not a close case; the evidence at trial was overwhelming, and defendant has not raised sufficiency of the evidence to prove him guilty beyond a reasonable doubt as an issue on appeal.

Accordingly, the judgment of the circuit court of Cook County finding defendant guilty of reckless homicide and driving while under the influence of alcohol is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.