THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WARREN ROBINSON, Defendant-Appellant.

First District (3rd Division)   No. 1—91—1131

Opinion filed September 29, 1993.

Rita A. Fry, Public Defender, of Chicago (Millicent Willis, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Eileen O'Neill, and Anthony Carl, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Warren Robinson was convicted of first degree murder for the shooting death of Ernest Walton, a cab driver, on January 13, 1989.

On appeal defendant presents four issues as to whether: (1) the trial court erred in denying defendant's request for a continuance to substitute appointed counsel for a private attorney; (2) his guilt was not proven beyond a reasonable doubt; (3) the admission of evidence of other crimes was error; and (4) the prosecutor's comments during rebuttal closing argument deprived defendant of a fair trial.

We affirm defendant's conviction.

On the evening of January 13, 1989, Ernest Walton died after sustaining three gunshot wounds while in his cab. On May 27, 1989, defendant was arrested and charged with first degree murder, felony murder and armed robbery for the murder of Ernest Walton.

On the day that trial was scheduled to begin, while preliminary motions were being heard in the judge's chambers just prior to jury selection, defendant advised the court that another attorney had been engaged for him by someone else. The assistant public defender, defendant's appointed counsel, told the court that neither she nor her

co-counsel had been advised of defendant's intention to secure private counsel. The court directed defense counsel to confer with defendant and to determine fully his intentions.

Defense counsel advised the court that defendant "knows the Court will give him eight hours if he is aware of the fact that he has retained counsel" and "is under the impression that if he doesn't have counsel of his choice that he has so-called polluted the record." At defendant's instruction, defense counsel asked the court for a continuance of eight hours or until the next day because defendant's family retained Richard Garvin to represent defendant.

The trial court noted that Mr. Garvin was not present and denied defendant's motion for continuance. The trial court found that it would not allow defendant at this late date "to obstruct the orderly process of the court call by all of a sudden coming in at the 12th hour so to speak and state that you now have an attorney." The trial court then decided to proceed with the jury selection and defendant responded "Yes, sir."

At trial Margaret Bingham testified that she had known defendant about two years prior to the night of the murder by the names "Businessman" and "Doug." Bingham also knew Ernest Walton, the victim, for about 12 or 13 years by the name of Spike Jones. Bingham was a friend to both defendant and Walton.

On the evening of January 13, 1989, Bingham was at 3639 West Roosevelt Road, which premises were used by various cab drivers as a cab stand and recreation hall including pool tables. About 9 p.m., shortly after Bingham shot a game of pool with Anthony Moss, defendant entered the premises seeking a cab to take him to Ohio and Lawler. Defendant was wearing a long raccoon coat, a cowboy hat, blue jeans, and black boots. Defendant left the premises in a cab operated by Ernest Walton.

About 45 minutes after defendant and Walton left, a call was received at the cab stand stating that a cab driver had been shot. Police officers came and interviewed a number of people, including Bingham, at the cab stand. Bingham described defendant to the police and provided an address, apparently where she believed defendant might be. Bingham gave the police the names "Douglas" and "Businessman" when referring to defendant.

Bingham further testified that after the police left the cab stand, she went to the house of her friend King Bussey, arriving about 11 p.m. About one hour later, defendant came to Bussey's house, told Bingham that he believed her name "was on the police paper for the witness of the murder charge" and threatened her. While Bingham

stayed in the kitchen, defendant and Bussey went into the bedroom and closed the door.

Bingham testified that she was frightened as to defendant's intentions and knocked on the bedroom door. When the door opened, Bingham saw defendant and Bussey sitting near a table with cocaine, a pistol and money lying on it. Bingham then left Bussey's house and went across the street to her mother's house.

Bingham also testified that after she left Bussey's house, she went to the home of a police officer she knew as "ML" and told ML that the police could find defendant at Bussey's house. Bingham did not know whether ML contacted other police or acted upon her information.

Bingham denied telling the police on the night of the murder that the person at the cab stand was Douglas Robinson, the 55-year-old uncle of defendant. Bingham identified defendant as the man who walked into the cab stand on the night of the murder.

Anthony Moss essentially corroborated Bingham's testimony as to the events at the cab stand on the night in question. Moss testified that he was a good friend of Walton for six or seven years, knew Walton by the name of Spike Jones, and was playing pool with Bingham when defendant entered the cab stand and asked for a cab. Moss described defendant as wearing a long brown fur coat but did not know if he was wearing gloves. Moss saw defendant hug Bingham when he arrived at the cab stand, heard Walton agree to take defendant to his destination (Ohio and Lawler), saw defendant and Walton leave together, and was informed by a telephone call placed to the cab stand about 30 to 45 minutes later that Walton had been shot.

Moss further testified that on May 27, 1989, he positively identified defendant in a lineup as the man who walked into the cab stand on the night of the murder and Moss also identified defendant in court. Moss had never seen defendant before the night of the murder.

Moss admitted that some charges had been pending against him on matters unrelated to Walton's murder and those charges had been dropped several months before defendant's trial. After further investigation, the trial court questioned Moss outside the presence of the jury and determined that Moss had been charged with burglary but the matter was dropped in November 1989 due to a finding of no probable cause.

Albert Martin testified that about 8:45 p.m. on January 13, 1989, he was walking down Lawler Street when he heard a car sideswiping parked cars and three gunshots. Martin then saw one man, later identified as defendant, jump out of the car before it crashed into another

parked car. Defendant was wearing a puffy brown coat and Martin saw three-quarters of his face from the streetlight on the corner. Several days after the accident, the police came to Martin's house with some photographs, including one of defendant, and asked Martin to identify the man who had jumped out of the car. At that time, Martin picked defendant's picture out of the group but told the police that the picture was blurry and he wished to see the man in person to be sure of the identification. Thereafter, Martin identified defendant at a lineup on May 27, 1989, and in court.

Defendant did not testify but his theory of the case was that his uncle, Douglas Robinson, not he, committed the crime.

The trial court granted defendant's motion for directed verdict on the armed robbery charge. The jury then found defendant guilty of murder, and the trial court imposed a 40-year sentence of imprisonment.

On appeal, defendant first asserts that the trial court violated his constitutional right to counsel of his own choice by denying his request for a continuance to substitute counsel.

The State contends that the trial court did not abuse its discretion when it denied defendant's motion for a continuance because it determined that the request was calculated solely for the purposes of delay. We agree.

A criminal defendant has a constitutional right to counsel (U.S. Const., amend. VI; Ill. Const. 1970, art. I, §8) but the right to choice of counsel is not absolute. *People v. Barrow* (1989), 133 Ill. 2d 226, 252, 549 N.E.2d 240; *People v. Myles* (1981), 86 Ill. 2d 260, 268, 427 N.E.2d 59; *People v. Volkman* (1992), 235 Ill. App. 3d 888, 893, 601 N.E.2d 1179; *People v. Burrell* (1992), 228 Ill. App. 3d 133, 141-42, 592 N.E.2d 453.

A defendant has the right to be represented by retained counsel of his own choosing but does not have a right to choose appointed counsel. (*People v. West* (1990), 137 Ill. 2d 558, 588, 560 N.E.2d 594.) The right to select counsel, however, may be restricted "where the exercise of that claimed right would delay or impede the effective administration of justice." (*West*, 137 Ill. 2d at 588.) Accordingly, the right of a defendant to choose his own counsel must be balanced against the equally desirable public need for the efficient and effective administration of criminal justice. *Volkman*, 235 Ill. App. 3d at 893; *People v. Bodoh* (1990), 200 Ill. App. 3d 415, 425, 558 N.E.2d 178.

The granting of a continuance to substitute counsel rests within the sound discretion of the trial court and must be considered in light of the diligence shown on the part of the movant. (Ill. Rev. Stat.

1989, ch. 38, par. 114—4(e); *West*, 137 Ill. 2d at 589, citing *People v. Friedman* (1980), 79 Ill. 2d 341, 347-49, 403 N.E.2d 229; *Burrell*, 228 Ill. App. 3d at 142; *Bodoh*, 200 Ill. App. 3d at 425.) Whether a trial court's determination to deny a continuance violates the right of a criminal defendant to be represented by counsel of his own choosing turns on the particular facts of each case. *Friedman*, 79 Ill. 2d at 348.

No abuse of discretion has been found where the trial court denies a motion for continuance to substitute counsel when it could reasonably conclude that the request was made solely for the purpose of delay because "this right may not be employed as a weapon to indefinitely thwart the administration of justice or to otherwise embarrass the effective prosecution of crime." *Friedman*, 79 Ill. 2d at 349; see also *People v. Jackson* (1992), 228 Ill. App. 3d 868, 875, 593 N.E.2d 760 ("defendant's trial-day request for other counsel [was] little more than a dilatory tactic"); *People v. Jackson* (1991), 216 Ill. App. 3d 1, 7, 574 N.E.2d 719 ("[i]t is apparent that defendant was merely attempting to delay the trial with his last-minute request"); *Bodoh*, 200 Ill. App. 3d at 425 ("defendant's request for new counsel was a defense tactic designed to avoid trial").

Other factors considered in justifying a denial of a continuance based upon a request to substitute other counsel include the lack of evidence that the new attorney was ready, willing and able to take and proceed with the case (*Burrell*, 228 Ill. App. 3d at 142-43), the failure of the defendant to articulate an acceptable reason for desiring new counsel when he is already represented by an experienced, court-appointed criminal lawyer (*Jackson*, 216 Ill. App. 3d at 7), and the representation by current counsel for a lengthy period prior to the request for new counsel (*Bodoh*, 200 Ill. App. 3d at 425 (during the two-year pendency of the case, the defendant never indicated a dissatisfaction with his attorney)).

■ In the present case, after conferring with defendant, defense counsel informed the trial court that neither she nor her co-counsel was aware of defendant's plan until that day and that defendant believed a request for new counsel would postpone the trial. Moreover, although the new attorney was identified by name, he was not present and there is no indication that he had filed an appearance and was ready, willing and able to represent defendant. Defendant offered no evidence to verify his alleged new counsel's employment and no explanation as to why he wanted new counsel. Furthermore, defense counsel had represented defendant for nearly two years (22 months) and defendant had never expressed dissatisfaction with his appointed counsel.

Under the circumstances of this case, we find that defendant's trial-day request for a continuance to substitute appointed counsel for retained counsel was a tactic calculated only to delay his trial. Thus, the trial court did not abuse its discretion in denying defendant's request.

Second, defendant asserts that the evidence at trial failed to establish his guilt beyond a reasonable doubt. Defendant argues that no physical evidence connected him to the crime and the testimony of the State's witnesses was contradictory or unbelievable.

The State maintains that the evidence sufficiently established that defendant shot and killed the victim. We agree.

A reviewing court cannot reverse a jury's guilty verdict unless the evidence, when viewed in the light most favorable to the prosecution, was so palpably contrary to the verdict, so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt. (*People v. Harre* (1993), 155 Ill. 2d 392, 397-98, 614 N.E.2d 1235.) A court of review cannot substitute its judgement for that of the jury and cannot reverse a jury verdict if any rational trier of fact could have reached the conclusion below. (*Harre*, 155 Ill. 2d at 398.) This standard of review applies regardless of whether the evidence is direct or circumstantial. (*People v. Sutherland* (1992), 155 Ill. 2d 1, 17, 610 N.E.2d 1.) Moreover, it is the function of the jury as the trier of fact to evaluate the inferences to be drawn from the evidence, weigh the credibility of the witnesses, and resolve conflicts or inconsistencies in their testimony. (*People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268; *People v. Young* (1989), 128 Ill. 2d 1, 48-49, 538 N.E.2d 461.) Finally, the identification of the defendant by a single witness is sufficient to sustain a conviction where the witness had an adequate opportunity to view the defendant and the in-court identification is positive and credible. *People v. Slim* (1989), 127 Ill. 2d 302, 307, 537 N.E.2d 317.

■ Applying these principles to the present case, we find that the evidence sufficiently established defendant's guilt beyond a reasonable doubt. Two witnesses (Bingham and Moss) identified defendant as the man who left the cab stand with the victim to go to the corner of Ohio and Lawler. Albert Martin testified that he observed the victim's car sideswiping parked cars near the intersection of Ohio and Lawler, heard three gunshots and saw defendant leap out of the car before it crashed. All three witnesses positively identified defendant in court at trial. In addition, both Moss and Martin identified defendant in a lineup prior to trial. This evidence, viewed in the light

most favorable to the prosecution, was not so palpably contrary to the jury's verdict as to create a reasonable doubt of defendant's guilt.

Next, defendant contends that the trial court erred in allowing the testimony of Margaret Bingham regarding her observation of defendant sitting at a table with cocaine, money and a gun on the evening of the shooting. Defendant argues that this testimony was improper because it constituted inadmissible evidence of other crimes and had not been disclosed by the State in discovery.

The State asserts that it did not breach any duty to disclose because the State had tendered to defendant a summary of Bingham's testimony about a month before trial, including a reference to the money and gun, and the State did not know about the cocaine until trial. The State also contends that the evidence regarding the money and gun related to the armed robbery and murder charges and thus were not evidence of other crimes. As to the cocaine, the State maintains that any error was cured when the trial court admonished the jury to disregard that portion of Bingham's testimony. Alternatively, the State submits that any error was harmless because the competent evidence at trial established proof of defendant's guilt beyond a reasonable doubt.

Generally evidence of other crimes for which the accused is not on trial is inadmissible because it is unfairly prejudicial to the accused. (*People v. Jenkins* (1991), 209 Ill. App. 3d 249, 256, 568 N.E.2d 122.) Prejudice to the defendant, however, can be sufficiently cured where the trial court admonishes the jury to disregard testimony of other crimes. *People v. Sassu* (1986), 151 Ill. App. 3d 199, 206, 502 N.E.2d 1047.

■ We find that the trial court did not err in admitting testimony regarding the money and the gun because these items were relevant to the offenses of armed robbery and murder for which defendant was on trial. Thus such testimony did not relate to other crimes but rather to the same crimes for which defendant stood accused.

As to the cocaine, the trial court admonished the jury immediately after Bingham's testimony concluded that the testimony regarding the alleged narcotics found in the presence of defendant could not be considered in any way in arriving at a verdict. We do not minimize the effect of any reference to possible drug possession in a criminal case. However, any possible prejudice to defendant was sufficiently cured by the trial court's admonishment.

Supreme Court Rule 415(b) places a continuing duty on all parties to disclose material or information which is subject to disclosure. (134 Ill. 2d R. 415(b).) Sanctions may be imposed against a party that fails

to comply with discovery rules by the trial court "as it deems just under the circumstances." 134 Ill. 2d R. 415(g)(i).

The record reveals that the State represented to the trial court that it had interviewed Bingham about December 4, 1990, then prepared a summary of her anticipated testimony including references to the money and gun, and tendered the summary to defense counsel on December 11, 1990. Jury selection for defendant's trial commenced and concluded on January 22, 1991, and the trial began immediately thereafter on January 23, 1991. Therefore, the summary, a copy of which was apparently tendered to the court, predates the commencement of trial.

Defendant, however, claimed that the summary had never been received. The summary of Bingham's testimony tendered to the court was not made a part of the record on appeal.

The trial court further observed that defendant also had the opportunity to interview Bingham before trial. Although defendant protested that the State had advised them that Bingham had moved away, the trial court responded that it would have made Bingham available for an interview before commencing trial that day if such request had been made.

Reasonable presumptions are in favor of the trial court's action and the burden is upon the appellant to overcome such presumption by affirmatively showing the errors charged. (*People v. Blount* (1991), 220 Ill. App. 3d 732, 745, 580 N.E.2d 1381.) In *Blount*, the State contended that it had furnished certain medical records to the defendant but the defendant claimed otherwise and the issue of whether the reports actually had been tendered was never resolved. Accordingly, this court in *Blount* found that "the presumption before us, based on the circuit court's ruling, is that there was no discovery violation." *Blount*, 220 Ill. App. 3d at 745.

As in *Blount*, there was no resolution in the present case as to whether the summary of Bingham's statement had been furnished to defendant. Thus, the trial court is presumed to have acted correctly.

The testimony as to cocaine was as much a surprise to the State as it was to defendant according to the record. It is axiomatic that a party cannot disclose information which it does not know or have in its possession.

Even assuming that a discovery violation occurred, such violation does not necessarily require reversal. (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172, 514 N.E.2d 970; *People v. Manzo* (1989), 183 Ill. App. 3d 552, 557, 539 N.E.2d 237.) "A new trial should only be granted if the defendant is prejudiced by the discovery violation and the trial

court failed to eliminate the prejudice." (*Cisewski*, 118 Ill. 2d at 172.) To determine whether a new trial is warranted, the court should consider, among other factors, the closeness of the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped the defense discredit the evidence. (*Cisewski*, 118 Ill. 2d at 172.) In addition, this court has considered the failure of the disputed statements to be crucial to the State's case and the failure of the defendant to demonstrate that the statements strongly contributed to the jury's verdict. *Manzo*, 183 Ill. App. 3d at 558.

The evidence in the present case was not closely balanced, and we do not consider the allegedly undisclosed summary to be particularly crucial to the State's case. Moreover, where, as here, the defendant has not interviewed the known witness, any claim of surprise and prejudice is negated. (*People v. Pasch* (1992), 152 Ill. 2d 133, 193, 604 N.E.2d 294.) Thus we would conclude that any error was harmless.

Defendant next contends that he was denied a fair trial by the State's allegedly numerous improper and prejudicial remarks during closing rebuttal arguments.

The State is afforded great latitude in closing argument and a trial court's determination as to the propriety of such argument should be followed absent a clear abuse of discretion. (*People v. Thompkins* (1988), 121 Ill. 2d 401, 445-46, 521 N.E.2d 38; *People v. Batson* (1992), 225 Ill. App. 3d 157, 166, 587 N.E.2d 549.) Closing arguments by the State may be based on the evidence presented or reasonable inferences therefrom, comments by defense counsel which clearly invite or provoke a response, the activities of the defendant or the inconsistencies in defense counsel's arguments. *People v. Graca* (1991), 220 Ill. App. 3d 214, 221, 580 N.E.2d 1328.

To constitute reversible error, any improper remark by the prosecutor during closing argument must be such that, without the remark having been made, the verdict would have been different. *People v. Leger* (1992), 149 Ill. 2d 355, 399, 597 N.E.2d 586; *People v. Manley* (1991), 222 Ill. App. 3d 896, 908, 584 N.E.2d 477; *People v. Lewis* (1990), 198 Ill. App. 3d 976, 982, 556 N.E.2d 697.

■ The first contested remark made by the prosecutor was a reference to John Wayne Gacy as follows:

> "[Assistant State's Attorney]: Why did they just assign Detective Conroy? Well, don't you think that one of the reasons for that is that there are a lot of murders in the City of Chicago, how many murders do you think there are in the City of Chicago on a daily basis—
>
> [Defense Counsel]: Objection.

THE COURT: Overruled.

[Assistant State's Attorney]: They make it sound like the Defendant is John Wayne Gacy, like this was the crime of the century. The tragic reality of the situation is that this is not the crime of the century, it is just another murder on the streets of Chicago and nothing more, and that may be something that is hard for you to understand but that is just the reality of what life is like today in the City."

Defendant argues that this comment is improper because (1) it inevitably reminded the jurors of the horrors of the Gacy case and any comparison to Gacy would cause the jurors to feel repulsed and to transfer those feelings to defendant; and (2) it played on the fears and passions of the jurors by insinuating that if the jurors did not convict defendant they would be contributing to or condoning the city's high murder rate.

The record reveals that defendant failed to make an objection to this remark at trial and thus has waived consideration of this issue on appeal. It is well established that a proper objection both at trial and in a written post-trial motion is required to preserve an issue for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) Moreover, we find that the plain error doctrine does not apply in light of the evidence presented in the case at bar. Even defendant acknowledged, in his motion for a new trial, that the reference to Gacy was made in *de minimus* fashion.

Second, defendant maintains that the prosecutor misstated the facts as to Bingham's testimony by observing that Bingham was "not very good with times" to explain why she took so long to report the alleged threats and why they stipulated to the date the threats were reported. Defendant argues that there is no evidence as to Bingham's ability to judge times.

The State contends that its comment on Bingham's ability to judge time was an invitation to the jury to make an inference based on Bingham's testimony during cross-examination where she was unable to remember the date, month or year of recent conversations.

The record reveals that the cross-examination to which the State refers concerned Bingham's inability to recall when she had her first conversation with the assistant State's Attorneys. Notably, the first mention of Bingham's confusion over dates was made by defense counsel during her closing argument by commenting as follows:

"Now, Margaret gets confused, I mean Margaret most definitely does get confused, she can't remember when was the last time she talked to them [assistant State's Attorneys], she can't

remember the months, the year, she remembers being shown pictures, and you take this thing into account when you go to the memory *** ."

From our review of Bingham's entire testimony, we find that the prosecutor's remark was proper as a legitimate inference drawn from her testimony. Furthermore, the State's reference to Bingham's inability to remember dates is virtually indistinguishable from the remarks previously made by defense counsel regarding Bingham's confusion over dates.

Third, defendant contends that the State incorrectly commented that the circumstances under which Bingham alleged to have reported defendant's threat to ML were unknown. Defendant argues that this comment is untrue because Bingham testified that she went to ML's home on the night of the shooting to report the threat.

The State asserts that the comments were invited by defendant's closing argument, which asked for an explanation as to why no further police action had been taken when Bingham told ML that defendant had threatened her when she was at King Bussey's house on the night of the murder.

After recounting Bingham's testimony as to her conversation with ML, defense counsel asked the jurors to assume they were sitting at home with a police officer when a woman entered and told the police officer that she had just seen a person who committed a murder and the murderer threatened her. Yet, defense counsel argued, there is no evidence of subsequent police action.

Thereafter, in rebuttal closing argument, the prosecutor misstated the record by commenting that Bingham's conversation with ML could have been at a bar. Bingham specifically testified that she went to ML's house, not a bar. However, we find that this improper remark was not so prejudicial as to warrant reversal since, absent the remark, the verdict would not have been different in light of the evidence.

Fourth, defendant asserts that the prosecutor misstated the facts by allegedly arguing that Martin testified he was never shown a photograph of defendant prior to the lineup.

Defendant misrepresents the State's argument on this issue. The prosecutor's comments comport with the trial testimony given by Martin. Martin testified that he viewed several photographs at his home a few days after the murder in January 1989 and picked out defendant's picture but asked to see defendant in person to make certain of his identification because the picture was blurry. In response to Martin's request, the police conducted a lineup months later in May

1989. We believe that the State's remarks clearly refer to two different events: (1) the viewing of photographs in January and (2) the viewing of the lineup in May. The State correctly argued that there was no evidence to suggest that Martin viewed any photograph in May when the lineup was conducted.

Fifth, defendant contends that the prosecutor's arguments regarding the absence of fingerprints in the car was not reflective of the expert testimony and served only to confuse the jury.

Defendant has waived this issue by failing to specify this allegation or the specific contested comments in his motion for a new trial. (*Enoch*, 122 Ill. 2d at 186.) Even assuming that this issue had not been waived, we find that any possible error was harmless because there was no fingerprint evidence and thus the jury convicted defendant based on the witnesses' testimony. Accordingly, we cannot say that the verdict would have been different if the State's remarks had not been made.

Sixth, defendant asserts that the prosecutor's remark about defendant knowing "the evidence was closing in on him" was unfounded because defendant did not testify and thus it would be a stretch of the facts to say what he knew.

The contested remarks are as follows:

"Consider what the Defendant said, as you heard from the testimony of Margaret Bingham when the Defendant walked into that kitchen that very same night, walked into that kitchen and said that he had found out that she was on the police paper, and consider what he said to her, is that something that an innocent man would say to Margaret Bingham that night? No, ladies and gentlemen, it is not, because back then the Defendant knew that he had killed the cab driver and the police were looking for him and even then, ladies and gentlemen, he knew that the evidence was closing in on him and closing in on him fast."

The State contends, and we agree, that the contested remark constituted a legitimate inference of what defendant knew at the time he spoke to Bingham after he had murdered the victim. Accordingly, we find that these remarks were proper.

Seventh, defendant asserts that the State improperly vouched for the credibility of one of its witnesses by stating that Albert Martin was "a keen observer" and a "neutral party."

Defendant has waived this argument on appeal by failing to object at trial. (*Enoch*, 122 Ill. 2d at 186.) Even assuming that waiver did not apply, we find that these remarks were proper comment on Mar-

tin's testimony and were invited by defense counsel's closing arguments which suggested that Martin's observations were "mistaken" and Martin had a "reason" to be biased. In closing argument a prosecutor may reflect upon a witness' credibility if it is based on facts in the record or inferences fairly drawn from those facts (*People v. Shum* (1987), 117 Ill. 2d 317, 348, 512 N.E.2d 1183) or if they are invited responses to the defendant's comments made in his closing argument (*People v. Dodds* (1989), 190 Ill. App. 3d 1083, 1099, 547 N.E.2d 523).

Eighth, defendant contends that the State improperly bolstered its own credibility by making a detailed analysis of how a good frame-up of defendant might have been conducted.

The State asserts that its description of a hypothetical "frame-up" was solely in response to defendant's closing argument.

Defendant's theory throughout trial was that his uncle, Douglas Robinson, was responsible for the crimes for which he was charged. During closing argument defense counsel said "let's trace the investigation and see if it fits in the neat thesis that the State just outlined." Defense counsel argued that "the whole premise of this case is that Warren Robinson [defendant] is Douglas Robinson," characterized the trial witnesses' testimony as "unbelievable coincidences," and proposed that sometime during the police investigation "it became convenient for Warren to become Douglas." Throughout closing argument, defendant insinuated that the witnesses and the police somehow conspired to mold their testimony to point guilt at defendant.

Defense counsel invites rebuttal by the State when the defense counsel suggests the existence of a police conspiracy. (See *People v. Johnson* (1986), 114 Ill. 2d 170, 201, 499 N.E.2d 1355; *People v. Watkins* (1991), 220 Ill. App. 3d 201, 208, 581 N.E.2d 145 (defense counsel implied that the police were somehow implicated in a conspiracy to frame the defendant); *People v. Morando* (1988), 169 Ill. App. 3d 716, 734, 523 N.E.2d 1061 (the challenged remarks were permissible as a reply to defense counsel's argument suggesting a conspiracy of witnesses against the defendant).) Moreover, the State may challenge the defendant's theory of defense in closing argument when there is evidence which justifies that challenge. *People v. Muzard* (1991), 210 Ill. App. 3d 200, 211, 569 N.E.2d 26.

We find that the contested remarks were invited by defense counsel's assertions in closing argument and thus were proper.

Ninth, defendant asserts that the prosecutor misstated the law by arguing that in order to find defendant not guilty, the jurors had to believe that all of the State's witnesses were lying.

The State maintains that the prosecutor's remarks were a permissible response to defense counsel's numerous insinuations in her closing argument.

In rebuttal closing argument, the prosecutor argued:

> "[Assistant State's Attorney]: Ladies and gentleman, if you believe that all of these witnesses lied, if you believe that Albert Martin lied, if you believe that Margaret Bingham lied, if you believe that Anthony Moss lied, if you believe that Detective Curley and Detective Paulnitski and everybody else got up on that witness stand, raised their hand to tell the truth, the whole truth and nothing but the truth and then committed blatant perjury, then you should let the Defendant go—
>
> [Defense Counsel]: Objection. Misstating the standards.
>
> THE COURT: Overruled.
>
> [Assistant State's Attorney]: If, however, you believe that they told the truth then the evidence has proven the Defendant guilty beyond a reasonable doubt."

A prosecutor can state that the jury would ultimately have to believe one side over the other. (*People v. Pecoraro* (1991), 144 Ill. 2d 1, 16, 578 N.E.2d 942.) This court found no error in "the prosecution's statement that in order to believe defendant the jury would have to believe that everyone else was lying." (*People v. Smith* (1987), 158 Ill. App. 3d 595, 600, 511 N.E.2d 770.) Accordingly, we believe that the State in the present case did not misstate the law but rather advanced proper arguments to rebut defendant's contentions.

Tenth, defendant contends that the prosecutor erred in arguing that defendant was "thinking of committing a robbery" because the trial court granted defendant's motion for a directed verdict on the armed robbery charge.

The State alternatively asserts that (1) defendant waived this issue by failing to object at trial; (2) the remark was a reasonable inference drawn from the evidence; (3) the comment was not plain error; and (4) the comment did not determine the outcome of defendant's trial.

The record reveals that defendant did not object to this remark at trial and thus has waived this issue on appeal. (*Enoch*, 122 Ill. 2d at 186.) Moreover, since we do not believe that the evidence was closely balanced in the case at bar, the plain error doctrine does not apply.

Assuming that the issue was not waived, we would still find that this challenged comment was proper. Prior to closing argument, the trial court granted defendant's motion for a directed verdict on the armed robbery charge but denied defendant's motion to preclude the

State from mentioning that armed robbery could have been a motive in this case. The trial court reasoned, and we agree, that robbery was a possible motive and a reasonable inference drawn from the evidence.

Finally, defendant asserts that even if this court decides that each contested argument alone is not sufficient to merit a new trial, this court should consider the cumulative impact of the allegedly improper rebuttal arguments made by the State.

We recognize that there must be a point where a combination of harmless error becomes so harmful that reversal is dictated because of the cumulative impact upon defendant's right to a fair trial. However, the case at bar does not present such a situation.

For all the foregoing reasons, we affirm defendant's conviction.

Affirmed.

TULLY, P.J., and CERDA, J., concur.