FIRST DIVISION 

June 26, 2000

No. 1-97-4571

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

STEVEN HUGHES,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Leo E. Holt,

Judge Presiding. 

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Following a jury trial, defendant, Steven Hughes, was found guilty of attempted first degree murder, armed robbery, armed violence and aggravated battery.  The trial court merged the armed violence and aggravated battery counts into the attempted first degree murder conviction and imposed consecutive sentences of 30 years' imprisonment for the attempted murder conviction and 20 years' imprisonment for the armed robbery conviction.
  On appeal, defendant argues that: (1) he was denied his right to a speedy trial under the speedy trial provisions of the Code of Criminal Procedure of 1963  (Speedy Trial Act) (725 ILCS 5/103-5 
et seq
.
 
 (West 1996)); (2) the State failed to prove him guilty of attempted murder beyond a reasonable doubt; (3) he was denied his sixth amendment right to counsel when the trial court allowed his appointed counsel to withdraw following trial but prior to sentencing and refused to appoint new counsel; (4) his sentence should not be subject to the Illinois truth-in-sentencing law; and (5) he is entitled to credit for time served on both of his consecutive sentences. 

I. Statement of Facts 

On January 13, 1996, at approximately 12:30 a.m., Deborah Hubert was exiting a liquor store located at 55th
 
and State in Chicago.  Defendant asked her for money.  Hubert said "no," entered her car, then developed some concern for defendant, and motioned to defendant to come to her car window.  She asked defendant why he needed money, and defendant replied he needed money to get home.  Hubert offered to give him a ride home and defendant accepted.  As Hubert drove, defendant told Hubert about his problems and that he was depressed.  Hubert invited defendant to her apartment.  At the apartment, defendant indicated that he wanted to have sex.  Hubert told defendant no, and they continued to talk.  Defendant again expressed his desire to have sex.  Hubert then asked defendant to leave, walked to her bed to obtain a hammer from under the bed, and went to the door to open it.  At that point defendant grabbed Hubert. 

Defendant punched Hubert and Hubert hit defendant with her hammer.  Defendant then pulled out his hammer and hit Hubert in the face and on her legs with his hammer.  Defendant struck Hubert with unknown objects, cutting her face and stabbing her in the chest three times.  The struggle continued for 30 or 40 minutes.  Hubert was bleeding, fell to the floor and defendant took off her pants, took his pants off, and got on top of Hubert.  Defendant stated that he wanted to have sex.  Hubert told defendant she could not do anything because she was having a heart attack.  Defendant then got off Hubert and tied her hands behind her back with the telephone cord and tied a scarf around her mouth.  Defendant left Hubert's apartment with her car keys, video cassette recorder, television set and a shopping cart.  Hubert told her neighbor what happened and he called 911. 

Hubert gave the police a description of the defendant and she was taken to Cook County Hospital.  Dr. Piotrowski observed multiple lacerations on the right side of Hubert's face, bruising below both eyes, and blood on her face and clothes.  Dr. Piotrowski also noted three small puncture wounds on her chest and believed that the wound to the left of Hubert's sternum punctured her lung and caused it to collapse.  Dr. Piotrowski testified that the collapsed lung could have been life threatening if left untreated.

Around 3:20 a.m., Chicago police officer Robinson responded to a call from defendant's sister Cynthia.  Upon arriving at her apartment, Robinson noticed a shopping cart with a video cassette recorder, a television set, and a hammer.  Not finding defendant, Robinson left the apartment.  At  5 a.m., Robinson received a call to return to Cynthia Hughes' apartment.  He returned and arrested defendant.  

On August 19, 1996, defendant renewed his motion for appointed counsel other than the public defender, filed a 
pro se
 motion to suppress evidence and the assistant public defender requested to withdraw from the case.  The trial court granted defendant's motion for appointed counsel other than the public defender.  The court did not consider defendant's 
pro se
 motion to suppress evidence.  It found it to be an improper filing because defendant was not proceeding 
pro se
.  On September 6, 1996, the trial court appointed private counsel to represent defendant.  On February 11, 1997, defense counsel filed his motion to suppress evidence, and the hearing on defendant's motion to suppress evidence was held.   Defendant testified and the State called two witnesses.  On March 26, 1997, the trial court denied defendant's motion to suppress evidence. 

On June 25, 1997, defendant filed a motion for discharge pursuant to the speedy trial act.  At defendant's request, the case was continued to August 25, 1997, for transcripts to be reviewed.  On August 25, 1997, the court conducted a hearing on defendant's speedy trial motion.  Both the State and defendant agreed that 108 days were attributable to the State for calculating the 120-day period under the speedy trial act.  The parties disagreed over whether a 15-day period, from January 27, 1997, through February 11, 1997, was attributable to the defendant.  After reviewing transcripts, the trial court denied defendant's motion for discharge and found that defendant's protests did not negate defense counsel's agreement to a continuance and did not make this 15-day period of delay attributable to the State.  The court also noted that, as of January 27, 1997, defendant's motion to suppress evidence was still pending and had not yet been commenced.

On September 4, 1997, defendant's jury trial began.  During the trial, defendant threw a chair at defense counsel and charged at him before being subdued by court deputies.  From that point on, defendant's legs were shackled outside the view of the jury.  After hearing the testimony and evidence, the jury found defendant guilty of attempted first degree murder, armed robbery, armed violence, and aggravated battery. 

On September 29, 1997, defense counsel filed a motion for a new trial.  On October 31, 1997, defense counsel filed a motion to withdraw, and defense counsel attached to his motion several letters that defendant wrote following the jury's guilty verdict.  Defendant wrote to defense counsel's employer, the Attorney Registration and Disciplinary Committee (ARDC), and the media.  Defendant also filed a civil rights suit in federal court against defense counsel.  In these letters and in the civil suit, defendant alleged that defense counsel sexually assaulted him in the lock up and promised defendant competent representation only if he submitted to defense counsel's sexual advances.  Defense counsel believed that his refusal to agree to defendant's demands, including his refusal to present perjured alibi testimony during the trial and failure to obtain a transcript of a pretrial status date, resulted in defendant's "campaign of filth."  In connection with his motion to withdraw, defense counsel argued that because of defendant's course of conduct, defendant "has forfeited his right to counsel and has elected to go 
pro se
."

Before sentencing and before hearing any posttrial motions, the trial court granted defense counsel's motion to withdraw.  The court recognized that "[t]he [d]efendant's sixth amendment right to counsel is probably the most valuable of all his constitutional rights";  however, all constitutional rights may be waived, and the court concluded that defendant for posttrial proceedings had waived his sixth amendment right to counsel.  The court stated:

"The history of this case, the conduct of Mr. Hughes from its inception makes it almost impossible for the Court to deny [defense counsel's] motion for leave to withdraw.  I am tempted on the one hand to deny the motion for reason of judicial economy.  But I have a higher obligation that it seems to me also [sic], I have an obligation to protect persons who appear before the court, either as Defendants, or witnesses, or counsel.  No lawyer, no lawyer [sic] should be subjected to the abuse Mr. Hughes has inflicted on [defense counsel].

* * *

* * * [I]t is the judgment of the Court that appointing another lawyer, will simply hold the Court hostage and these proceedings would come to an end at this point because it signals to Mr. Hughes that a continuation of abuse on the lawyers, will simply result in that lawyer being given leave to withdraw, also.  And we will never terminate these proceedings."

The court then asked defendant if he was ready to argue the posttrial motion.  Defendant responded that he was not because he was not an attorney.  The defendant, however, asked for the case to be resolved.  Without hearing any argument from the State or the defendant, the court denied defendant's posttrial motion.  The court indicated it was going to take a short recess in order to read the presentence report prior to sentencing.  The State, however, responded that it was not ready for sentencing.  By order of court, the court continued defendant's sentencing hearing to November 21, 1997.

On November 21, 1997, the court conducted the sentencing hearing without appointing counsel for defendant.  Repeatedly, during the hearing, defendant requested the assistance of counsel.  The trial court denied his request and again stated that defendant waived his sixth amendment right to counsel because he chose "to hold the court hostage" and that no lawyer would accept appointment in this case due to defendant's behavior toward his previous attorney.  After the State presented evidence of aggravation, defendant was sentenced to consecutive prison terms of 30 and 20 years on the attempted murder and armed robbery convictions, respectively.  Defendant now appeals. 

II. Sixth Amendment Right to Counsel

Defendant contends that he was denied his sixth amendment right to counsel.  Before the hearings on defendant's posttrial motion for a new trial and sentencing, the trial court allowed defense counsel to withdraw and refused to appoint new counsel.  Defendant was not represented by counsel for posttrial motions or sentencing.  The State argues that defendant’s abusive conduct toward trial counsel constituted a waiver of his sixth amendment right to counsel. 

A defendant is entitled to counsel pursuant to the Sixth Amendment of the United States Constitution. U.S. Const., amends. VI, XIV.  An indigent defendant has the right to have counsel appointed for him.  
Gideon v. Wainwright
, 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963).  The Illinois supreme court has noted that "it is now well established that a defendant has a constitutional right to be represented by counsel 'at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected' [citation] and that sentencing is one such stage [citations]." 
 People v. Baker
, 92 Ill. 2d 85, 90 (1982), quoting 
Mempa v. Rhay
, 389 U.S. 128, 134, 19 L. Ed. 2d 336, 340, 88 S. Ct. 254, 257 (1967).  A defendant may waive this right and proceed without counsel but only if the defendant "voluntarily and intelligently elects to do so." 
 People v. Barker
, 92 Ill. 2d at 90; see also 134 Ill. 2d R. 401(a). 
 However, even if defendant does not elect to waive his right to counsel, defendant may not use this right as a weapon to undermine the trial court's responsibility to administer justice.  
People v. Myles
, 86 Ill. 2d 260, 268 (1981).  We review the trial court’s finding that defendant waived his right to counsel under an abuse of discretion standard.  
People v. Jackson
, 228 Ill. App. 3d 868, 874 (1992).

On October 31, 1997, more than a month after the defendant had been found guilty of all charges by a jury, defense counsel made a motion to withdraw from the case.  Although during the course of the case defense counsel had previously requested leave to withdraw, the record reflects that defense counsel represented defendant during hearings on pretrial motions and during the jury trial.  The relationship between defense counsel and defendant was at times volatile, however that difficult relationship did not delay the trial.  Even after a physical altercation during the course of trial, defense counsel was able to try the case.

The supreme court in 
Myles 
addressed the effect of a defendant's abusive conduct toward defense counsel on the administration of justice.  
Myles
, 86 Ill. 2d at 268.  In 
Myles, 
the trial court allowed defendant's first counsel to withdraw after counsel reported he received threats about his representation in defendant's case.  Over defendant's and the public defender's objection, the trial court appointed the public defender to represent defendant.  Prior to trial, defendant told the trial court that he wanted an appointed counsel other than the public defender, but the trial court denied defendant's request and also denied the public defender's motion to withdraw.  Defendant did not discuss his case with the public defenders, was abusive toward them, and disrupted the start of the trial.  As a result,  the public defenders did not sit with defendant during trial but sat in the courtroom. 
 Myles
, 86 Ill. 2d at 265.  Defendant represented himself during the trial.  Although the public defenders did not sit with defendant, they advised defendant on several occasions during the trial.  
Myles
, 86 Ill. 2d at 266-67.

On appeal, defendant contended that counsel's failure to participate in the trial denied him his right to effective assistance of counsel.  The supreme court rejected defendant's argument and held that defendant's own conduct brought upon the quality of representation he received.  The court found that defendant sought to prevent the administration of justice and delayed his trial with his conduct toward his initial counsel and the public defenders appointed to represent him. 
 Myles
, 86 Ill. 2d at 270-71.

Following 
Myles
, courts have found that a defendant abandons his right to counsel when his conduct toward counsel prevents the effective resolution of the case and unnecessarily delays trial. 
People v. Kennedy
, 204 Ill. App. 3d 681, 684 (1990)
.  In 
Kennedy
, defendant objected to representation by the public defender and, after the trial court refused to appoint defendant different counsel, he requested to serve as co-counsel with the public defender.  The public defender objected to defendant's request.  The trial court advised defendant that he could proceed 
pro se
 or consent to the representation of counsel.  Defendant then filed an ARDC complaint against his counsel and the court allowed counsel to serve only as "backup" with defendant representing himself.  Defendant next filed a federal suit against counsel and the trial court allowed counsel to completely withdraw.  The trial court found that defendant had abandoned his right to court-appointed counsel and elected to represent himself during trial. 
 Kennedy
, 204 Ill. App. 3d at 683.  Affirming the trial court, the appellate court noted that, in attempting to delay trial, defendant filed numerous motions for continuances and substitution of judges and four federal lawsuits against the prosecutors and the judges.  Moreover, defendant's complaints against his counsel  further sought to compromise the trial court's rulings and succeeded in causing a two-year delay.  The court therefore concluded that the trial court properly balanced defendant's right to counsel with its responsibility to administer justice and found that defendant's conduct constituted a waiver of counsel.  
Kennedy
, 204 Ill. App. 3d at 683-84.

Like 
Myles 
and 
Kennedy
, courts examining the issue of whether a defendant's conduct toward defense counsel has amounted to an abandonment of the right to counsel have similarly focused on the 
delay
 in proceeding to trial and the authority the court has to refuse to allow defendant to seek new counsel or obtain counsel on the eve of trial.  In 
People v. Vaughn
, 116 Ill. App. 3d 193, 197 (1983), this court recognized that defendant's inability to cooperate with five different court-

appointed attorneys caused numerous trial delays and, therefore, the trial court properly denied defendant's request for another attorney on the day of trial, finding that defendant elected to proceed 
pro se
 with standby counsel
.  
Vaughn
, 116 Ill. App. 3d at 197.  
A defendant's request to change counsel shortly before the commencement of trial has been denied because of the trial court's inherent discretion to balance defendant's right to choose the counsel of his choice with the orderly administration of justice.  
People v. Phelps
, 197 Ill. App. 3d 954, 957, 959 (1990); 
People v. Volkman
, 235 Ill. App. 3d 888, 893 (1992).  In both 
Phelps
 and 
Volkman, 
this court did not find that the defendants abandoned their right to counsel but affirmed the trial courts' denial of defendants' request to change trial counsel shortly before or on the day of trial. 
 Phelps
, 197 Ill. App. 3d at 959; 
Volkman
, 235 Ill. App. 3d at 893.  
 

In this case, on the day of trial, defendant did not seek to change counsel or engage in a course of conduct that attempted to delay trial.  We note that, during the State's case in chief, defendant attacked his trial counsel outside the presence of the jury, because defendant believed defense counsel did not properly preserve the record and obtain all the transcripts regarding his speedy trial claim.  After the court found defendant in direct criminal contempt, defendant apologized for this outburst, did not engage in similar interruptions, and did not request a new counsel.  The court then required defendant to wear leg shackles when he sat at defense table.  Thus, the record reveals that unlike 
Myles
, 
Kennedy
, and 
Vaughn
, defendant did not wish to change counsel immediately prior to the start of trial or the posttrial proceedings, and did not use his right to counsel to delay the trial proceedings or posttrial proceedings.  The issue here is whether defendant's conduct toward defense counsel constituted a waiver of counsel and justified the trial court's decision to refuse to appoint new counsel for posttrial motions and sentencing.  

The record indicates that after the trial court denied defendant's motion for discharge pursuant to the speedy trial act and the jury returned guilty verdicts, defendant engaged in a course of conduct to discredit his attorney.  Once defendant began this campaign of abuse, the attorney-client relationship broke down to the point that defense counsel requested to withdraw.  Before the hearings on posttrial motions and sentencing, defendant had filed an action in federal court against defense counsel and had written numerous letters to various agencies complaining of defense counsel's conduct.  However, defendant did not request a new counsel or ask to proceed 
pro se
 for posttrial hearings.  Rather, it was counsel that asked leave to withdraw.  Based on defense counsel's motion, 
not
 defendant's request, the trial court allowed defense counsel to withdraw and found that by abusing his attorney defendant waived his right to counsel.  

We conclude the trial court properly allowed defense counsel to withdraw, however, at that point, new counsel should have been appointed to represent defendant during these critical posttrial proceedings.  Defendant was placed in a position of arguing posttrial motions, presenting evidence of mitigation to support a reduced sentence, and countering the State's attempts to sentence him to consecutive terms in prison without counsel.  The record does not demonstrate defendant's level of education, mental capacity, experience and understanding of the posttrial and sentencing stages of the legal proceedings. 

In 
People v. Timmons
, 233 Ill. App. 3d 591 (1992), the defendant had been represented by four different attorneys, filed numerous civil lawsuits against judges, prosecutors and former defense counsel, and was denied leave to replace his fourth court-appointed attorney.  At that point defendant stated that he would be forced to proceed 
pro se
, and threatened to cause such a commotion that the  trial could not proceed.  The trial court denied any further continuances, found his conduct was an election to proceed 
pro se
 and appointed standby counsel.  The appellate court concluded that the trial court was justified in finding defendant's conduct tantamount to an election to proceed 
pro se
.  
Timmons
, 233 Ill. App. 3d at 596.  Here, however, unlike 
Timmons
, the defendant only changed attorneys once.  Moreover, defendant, unlike the defendant in 
Timmons
 was not given standby counsel to provide assistance and advise him at a critical stage of the proceedings. 
 Timmons
, 233 Ill. App. 3d at 596-97. 
 

The trial court in refusing to appoint counsel for defendant's posttrial proceedings focused on defendant's abusive conduct.  We recognize that the right to counsel may not be employed as a weapon to thwart the administration of justice, 
Timmons
, 233 Ill. App. 3d at 596.  However, there is no evidence that defendant's conflicts with his attorney delayed the resolution of the posttrial proceedings and undermined the administration of justice.  After the court allowed defense counsel to withdraw, defendant told the court he wanted to resolve the posttrial proceedings on that date.  The State, however, indicated it was not ready for the sentencing hearing and by order of court the defendant's sentencing hearing was continued to November 21, 1997.  Therefore, the trial court had ample time to appoint defendant a new attorney to represent him during posttrial proceedings and represent him at sentencing.  While the State agrees that defendant's conduct did not delay his trial or otherwise thwart the administration of justice, the State argues that defendant's abuse of defense counsel amounted to a waiver of the right to counsel.  Although defendant developed serious hostility toward defense counsel, there is no evidence that this hostility was a tactic used by the defendant to delay hearings on his posttrial motions or sentencing.  In fact, defendant sought resolution of the posttrial proceedings on October 31, 1997.

We do not believe that defendant's sharp conflicts with counsel after the conclusion of a jury trial that resulted in guilty verdicts are a sufficient basis to find a waiver of the right to counsel.  During the course of defendant's sentencing hearing, defendant repeatedly requested the assistance of counsel.  The sixth amendment right to counsel is an important right, and the defendant is entitled to counsel throughout his entire trial, including posttrial proceedings.  U.S. Const., amends. VI, XIV; 
People v. Baker
, 92 Ill. 2d 85 (1982).   Here, the trial court judge was well aware of the importance of this right.  He struggled to balance the defendant's right to counsel with his obligation to administer justice and recognizing these competing interests stated:

"* * * if there's any one single right that the criminal defendant is most supremely

entitled to, seems to me that it is his 6th
 Amendment right to counsel.  I reach that conclusion because a lay person is very hard pressed to protect any of his rights without counsel.  And so it is not simply his 6th
 Amendment right to counsel that is at stake; it's the protection of all of his rights.  His 4
th, 5
th, 6
th, 8
th Amendment rights which are implicated in a criminal proceeding are rendered impaired to an extreme degree when a defendant is unrepresented."

After documenting at length the abusive conduct of defendant toward defense counsel, by both words and actions, the court concluded that the defendant's conduct "has completely and sufficiently demonstrated in this Court's judgment a waiver of his right to counsel * * *  There's no lawyer out there that is better qualified to represent him.  And there certainly is no lawyer out there that I am willing to expose to the viciousness of Mr. Hughes."

The trial court concluded that defendant would cause any future appointed counsel to withdraw by subjecting new counsel to abuse.  However, we note that, during the course of the proceedings, while there was frequently discussion about the defendant representing himself or seeking other representation, there was only one substitution of attorneys.  The withdrawal of the public defender and the substitution of private defense counsel took place in September of 1996 and did not serve to unduly delay the proceedings.  Moreover, the trial was not delayed by any conflict between defendant and defense counsel.  We recognize that a defendant can waive his right to counsel by using that right to merely delay or frustrate the proceedings.  
People v.
 
Kennedy
, 204 Ill. App. 3d 681 (1990).  We in no way condone the abusive conduct of defendant.  However, we note that when the court was about to proceed to conduct the sentencing hearing, the State was not ready to proceed and the court ordered a continuance.  Appointing defendant counsel at that time would not have delayed proceedings since they were already delayed by order of court.  We therefore conclude that this record fails to establish that defendant's conduct frustrated or delayed resolution of the posttrial proceedings or otherwise undermined the administration of justice so as to constitute a waiver of the right to counsel.  

III. Conclusion

Based on the totality of the circumstances, the court’s failure to appoint counsel to represent defendant during the posttrial proceedings after defendant repeatedly requested the assistance of counsel denied defendant his sixth amendment right to counsel.  In light of this ruling it would be premature to address the other issues raised by defendant.  We vacate the sentences entered and remand the case for the appointment of counsel and hearings on defendant's posttrial motions, motion for a new trial and sentencing. 

Remanded with directions.     

RAKOWSKI and GALLAGHER, JJ., concur.